Louis E. Trieseler, Administrator of the Estate of Bert P. Beebe, Deceased, Appellant, v. William A. Ratican, Respondent.— 173 S. W. (2d) 595.

St. Louis Court of Appeals.    Opinion filed July 6, 1943.

Respondent's Motion for Rehearing denied September 10, 1943.

*Henry G. Trieseler* for appellant.

*William A. Ratican* for respondent.

BENNICK, C.—This is an appeal from the judgment of the Circuit Court of St. Louis. County in the matter of an allowance to respondent, William A. Ratican, for his services and expenses as the appraiser of the estate of Dr. Bert P. Beebe, deceased, in connection with the determination of the amount of the inheritance tax, if any, to which the estate might be subject.

The estate had been in process of administration in the Probate Court of St. Louis County following Dr. Beebe's death by suicide on April 22, 1938. On June 27, 1938, an inventory was filed showing the amount of the estate to be $7834.93. Of the total demands against the estate, those allowed by the time of respondent's appointment as appraiser amounted to $2174.64, of which the funeral bill of $1225.43 had been paid. In addition, there was then pending the claim of the United States Government for delinquent income taxes in the sum of $10,599.68, with statutory interest, which was subsequently compromised and allowed for $3669.43.

While so far as the files and records of the estate disclosed, there was nothing to indicate that the estate was subject to an inheritance

tax, it appears that the probate judge had known Dr. Beebe in his lifetime, and had information, and personally thought, that there were assets belonging to the estate which had not been reported to the administrator for inclusion in the inventory, and which, if found and accounted for, would be subject to the payment of a tax under the provisions of the inheritance tax law. [Secs. 571-604, R. S. Mo. 1939, Mo. R. S. A., secs. 571-604.]

In this situation, with the probate court of the opinion, from information in its possession, that the estate might be subject to tax, the court, on November 16, 1938, appointed respondent as the appraiser of the estate in connection with the court's determination of the amount of tax to be assessed.

On November 22, 1938, respondent filed his oath as required by law, and thereupon entered upon what he conceived to be the proper discharge of his duties by conferring with the probate judge, who imparted the information he had acquired regarding the existence of assets which had not been reported to the administrator; by checking and rechecking the records of the recorder of deeds and the assessor, both of St. Louis County and the City of St. Louis, for property listed in the name of Dr. Beebe, or in the name of any one of some four or five other people whose names the doctor might have employed in an attempt to conceal his own identity; by likewise checking the records in the offices of the comptroller and the board of public service in the City of St. Louis; by correspondence and frequent contact with certain of the heirs in California who were assisting with whatever information they had regarding the doctor's property holdings; by conferring with officials of the United States Government who were apparently engaged in a somewhat similar investigation of their own for the purpose of ascertaining whether there had been an income tax evasion; by checking records regarding property that the doctor had inherited from his parents; and by attending hearings of a case which had been brought by the administrator in the Circuit Court of the City of St. Louis for the recovery of $206,000 allegedly belonging to the estate.

Being unable to complete his investigation and make his report within twenty days after his appointment, respondent, at successive intervals, was given extensions of time in which to report; and on February 14, 1940, filed his report disclosing that he had failed to discover any assets other than those included in the inventory, and that there was no inheritance tax due from the estate. He also reported that he had been actually and necessarily engaged for sixty-eight days in the performance of his duties as appraiser, for which services he claimed to be entitled to compensation at the rate of $5 a day as provided by law.

The probate court approved the report; allowed respondent the sum of $250 for his services as appraiser, together with the sum of $1.25 for actual and necessary expense incurred in making the appraise-

ment; and ordered that the administrator, before making final settlement, pay to respondent the sum of $251.25.

Thereafter the administrator filed his exceptions to the report and to the application for an allowance and the allowance made by the court. In due course the court overruled the exceptions, from which order the administrator appealed to the circuit court, wherein, upon the trial of the matter anew, the order of the probate court was affirmed. Following the entry of judgment in the circuit court, the administrator applied for and was granted an appeal to this court.

Respondent has filed a motion to dismiss the appeal upon the principal ground that the order fixing his *per diem* fee was not an appealable order, and that in any event the administrator was not aggrieved by the order so as to have had the right to appeal from it.

The matter of appeal in connection with proceedings for the assessment of inheritance tax is dealt with by Section 587 of the statutes, which provides that any person aggrieved by the judgment of the court as to the amount of liability for the tax may appeal to the court having jurisdiction of appeals from said court in ordinary civil actions, and in case of appeal shall be required to give bond in double the amount of the tax, interest, penalty, and "costs involved."

It has been held that the fees allowed an inheritance tax appraiser are "costs involved" within the meaning of such statute. [Harris' Estate v. Waltner, 233 Mo. App. 319, 118 S. W. (2d) 90.] Moreover, it is provided by Section 589 of the statutes that when an allowance is made to the appraiser, it shall be taxed against and paid by the adminstrator as other costs of the estate.

This court, in the case of In re Baptiste's Estate (Mo. App.), 259 S. W. 498, assumed, without question, that an order making an allowance to an inheritance tax appraiser was appealable, and entertained jurisdiction of the case on the merits. The appellants in that case were distributees of the estate, whose personal interest could not be questioned as in the case of the administrator who undertakes to appeal. However, in Harris' Estate v. Waltner, *supra,* which likewise involved the propriety of an inheritance tax appraiser's fee, the appeal from the probate court was taken by the executrix, whose right to have appealed was in effect conceded, if only she had complied with the statutory prerequisites relating to the giving of bond.

In the light of the above precedents, we conclude, therefore, that not only does the allowance made to the appraiser constitute an appealable order, but also that the administrator, against whom the fee is taxed, and whose duty it is to preserve the estate for the benefit of the creditors and distributees, may be a party aggrieved by the order if he believes that it represents the granting of compensation for time in which the appraiser was not actually and necessarily engaged in the performance of the proper duties of his office. Other complaints having to do with the sufficiency of appellant's abstract are not well

taken; and respondent's motion to dismiss the appeal should be accordingly overruled.

The ultimate question on this appeal is whether appellant's exceptions to respondent's report, and to his application for an allowance and the allowance made, should have been sustained.

The matter of the probate court's jurisdiction to appoint an inheritance tax appraiser, what his duties shall be, and how he shall be compensated, is all covered by Sections 585-589 of the statutes.

Under the act, the probate court is made the assessor of the inheritance tax (In re Hall's Estate, 337 Mo. 658, 85 S. W. (2d) 621), and, in cases where it grants letters testamentary or of administration upon the estate of any decedent, is vested with jurisdiction to determine the amount of the tax and the persons liable therefor, and to determine any question which may arise in connection therewith, and to do any act in relation thereto which the law authorizes in other matters or proceedings coming within its jurisdiction.

Immediately upon the filing of an inventory and appraisement of the estate of a decedent, it is the duty of the probate court or judge thereof in vacation to examine the same, and if it is apparent, in the opinion of the court or judge, that the estate is not subject to inheritance tax, such finding and opinion shall be entered of record, and there shall be no further proceedings relating to such tax, unless, upon the application of interested parties, the existence of other property, or an erroneous appraisement, is shown.

If it appears that the estate may be subject to tax, it is the duty of the court to set a day for hearing and determining the amount thereof after due notice to interested parties, or the court, before determining such matters, may, of its own motion, or on the application of any interested person, including the state treasurer, the prosecuting attorney, or the attorney-general, appoint an appraiser to appraise and fix the clear market value of any property, estate, or interest therein or income therefrom which is subject to the payment of a tax under the provisions of the law.

Upon his appointment, the appraiser is required to appraise all property, estate, assets, interest, or income at its clear market value, in connection with which he is authorized to issue subpoenas and compel the attendance of witnesses and the production of books, records, documents, papers, and all other material evidence; to administer oaths; and to take the testimony of witnesses under oath. He is further required to make a written report of his appraisement within twenty days after his appointment, unless for good cause shown the time is extended, and to return therewith the testimony of the witnesses and all other evidence and such other facts in relation thereto as the court may by its order require.

As compensation for his services, the law provides that the appraiser shall be entitled to $5 a day for the time he is actually engaged in hearing the evidence, viewing the property, and preparing and

filing his report, together with the actual and necessary expenses incurred by him in the performance of his duties; but that before he shall be entitled to such *per diem* or expenses, he shall file with the court a sworn statement of the same, and the court shall only allow his *per diem* for the time he was actually and necessarily engaged in the performance of his duties as appraiser.

The whole question in this case resolves itself into one of whether an appraiser appointed under the act is entitled to receive such *per diem* compensation for time spent, not in actually placing a valuation upon the estate for the purpose of assessing the inheritance tax, but in attempting to discover assets which, if found and accounted for, would be subject to a tax under the provisions of the act.

Having due regard for the limited function which the appraiser is designed to serve, we cannot escape the conclusion that the answer must be in the negative.

The law is explicit upon the question of what the appraiser's duties shall be and of the character of service for which he shall be entitled to receive compensation.

As his official title implies, his function is to appraise the estate at its clear market value, in the accomplishment of which he is authorized to hear evidence relating to such question, and at the conclusion of which he is required to make a report of his appraisement to the court. To be sure, the identification of the property as having belonged to the decedent at the time of his death, or as having been transferred by him in contemplation of death, must necessarily precede its valuation for the purpose of determining the amount of the inheritance tax, but as our act is written, all such matters are judicial questions for the court, and are ·to be shown either by the inventory filed by the administrator, or else upon the application of an interested party representing the State, which has the burden of showing that the particular estate is subject to inheritance tax. [In re Franz' Estate, 344 Mo. 510, 127 S. W. (2d) 401.] The appointment of an appraiser in no sense supplants the application of the ordinary proceedings for the discovery of assets, nor does the appraiser, by virtue of his appointment, become a representative of the State so as to have an interest and occupy a position adverse to that of the heirs and transferees.

Having completed his appraisement, the appraiser, under Section 589, is entitled to $5 a day for the time he was actually engaged in "hearing the evidence, viewing the property, and preparing, and filing his reports." This is the established yardstick by which his right to compensation is to be measured; and unless the services he has rendered fall within the category of the things enumerated by the statute, no authority exists for the allowance of compensation. [In re Baptiste's Estate, *supra.*]

In this case, the only property actually appraised by respondent was the personal estate listed in the inventory, which, as a matter of

fact, had been practically reduced to a cash basis by the time of his appointment. The great bulk of his sixty-eight days' work was directed to the attempted discovery of assets which never materialized. He concededly heard no evidence and viewed no property. The only service performed for which he is entitled to compensation under the statute was the work of preparing and filing his report, at which he was actually engaged for three days, and for which he is therefore entitled to a total *per diem* compensation of $15. There is no question about his right to the further allowance of $1.25 as the actual and necessary expense incurred in the performance of his duties as appraiser.

The Commissioner accordingly recommends that the judgment of the circuit court be reversed and the cause remanded with directions to the circuit court to enter up a new judgment awarding respondent the total sum of $16.25 for his services and expenses as appraiser.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. Respondent's motion to dismiss the appeal is, accordingly, overruled, and the judgment of the circuit court reversed and the cause remanded in accordance with the recommendations of the Commissioner.

*Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.