William G. BURNS, d/b/a International Advertising Agency, Plaintiff-Appellant,

v.

Bill BEENY, Defendant-Respondent.

No. 32619.

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

Roesel & Scher, Erwin J. Roesel, Clayton, for plaintiff-appellant.

Jerome J. Duff, Morton R. Newman, St. Louis, for defendant-respondent.

TOWNSEND, Commissioner.

On the merits this case presents two legal issues:

(1) Is the obligation evidenced by a negotiable promissory note extinguished by an oral declaration of gift made by the holder to the maker?

(2) Where a bilateral contract is entered into by A and B with provision for periodic advance payments by B, is the contract automatically terminated by B's failure to make such a promised advance payment, when the contract provides that failure by B to make any of the payments specified "on or before due dates shall cause this Contract to be terminated immediately"?

### The Evidence

(1) Plaintiff is the individual operator of an advertising agency. Defendant is, in the relation here important, a radio evangelist. For a consideration, undisclosed by the evidence, defendant on January 20, 1962 executed his promissory note in favor of plaintiff for $1896.30, payable in monthly installments of principal and interest. Clearly the principal sum of $1722.47 has never been paid by defendant[1] and according to the terms of the note has long been past due. Defendant testified that on February 7, 1963, plaintiff advised him by telephone that plaintiff desired to make a donation of the note to the Gospel Revival Hour, the corporate name in which defendant carried on his evangelistic activities, in order to take a deduction for the amount thereof in preparing plaintiff's income tax return; he says that plaintiff asked him to forward to plaintiff a receipt for such sum. De-

fendant's secretary testified that upon the instruction of defendant she executed such a receipt in the name of Gospel Revival Hour and forwarded same to plaintiff. Plaintiff denies any such conversation with defendant and states his recollection to be that in the relative year he charged off the balance of the note as a loss in making his income tax return.

Defendant's pleading admitted the execution of the note; no defence of lack of consideration has been asserted.

(2) In October 1963 the parties entered into a bilateral contract by the terms of which plaintiff "sold" to defendant broadcast time on a Mexican radio station. This agreement provided for recordings ("tapes") to be furnished by defendant to the radio station for broadcasting five days per week for a period commencing November 4, 1963 and running to November 2, 1964 and for a total of two hundred sixty broadcasts. For the services to be rendered by such broadcasting defendant promised to pay plaintiff the sum of $1700 per month from November 4, 1963 through April 30, 1964 and $850 per month from May 1, 1964 through September 30, 1964. Times of payment were specified as "due and payable weekly in advance commencing Nov. 4, 1963 thru Nov. 29, 1963; two weeks in advance commencing Dec. 2, 1963 and extending thru Dec. 31, 1963, then monthly in advance commencing Jan. 1, 1964 and each succeeding month thereafter".

Defendant forwarded to plaintiff altogether ten tapes and broadcasts were made therefrom over a two weeks period. Defendant testified that at some time near the end of the second week he telephoned plaintiff in Texas, expressing his dissatisfaction because the station's signal was weak and stating that he wished to terminate the contract. He stated that he told plaintiff at this time that he would be sending no more tapes and "there would be no more money"

---

[1]. In his answer "Defendant specifically disputes the amount of credit for prior part payment on the note instrument"; he failed however to offer any evidence on this point.

and also that he informed plaintiff that "our contract stipulated that when I stopped to make payments the contract ceased to be". Defendant had paid plaintiff four hundred twenty-five dollars for the week of November 4–8 and a further four hundred twenty-five dollars for the week of November 11–15, 1963. Thereafter no more tapes were forwarded by defendant but subsequently the ten tapes were replayed. Defendant made no other payments to plaintiff.

### Count I.

Plaintiff's claim, based on the promissory note, constitutes Count I of his petition. To this count defendant answered and as an affirmative defence alleged that "Plaintiff agreed with the Defendant that the Promissory Note instrument described in Count I would be rescinded and cancelled and returned to the Defendant as a gift from the Plaintiff to the Defendant and that for this reason there is no indebtedness between these parties arising out of the Promissory Note sued upon in Count I." Plaintiff moved to dismiss the affirmative defences set up in defendant's answer upon the ground that, insofar as Count I was concerned, the note was never delivered or returned to defendant and, if such alleged agreement was made orally, it was ineffective by virtue of Section 401.122, RSMo 1959, V.A.M.S. This motion was overruled. At the close of all evidence plaintiff moved for a directed verdict as to Count I. The motion was overruled. The jury returned a verdict for defendant on both counts.

■ Giving full credence to the whole of defendant's evidence, it fails to show a defence to the action on the note. The methods by which a negotiable instrument may be discharged are set forth in Sections 401.122 and 401.119, RSMo 1959, V.A.M.S. Under Section 401.122 the holder of such an instrument may renounce his rights, but such a renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon. In the present case there is no evidence of any renunciation in writing and obviously there was no delivery of the instrument to the defendant.

Section 401.119 sets out five methods by which a negotiable instrument is discharged. Two of those methods relate to payment and are not here pertinent. The third mentioned method of discharge is by the intentional cancellation by the holder. When the note here in question was introduced as an exhibit at the trial it bore no evidence of cancellation. Another specified method of discharge is that "When the principal debtor becomes the holder of the instrument at or after maturity in his own right". By definition [2] the defendant was not a holder of the note.

■ The last specified method of discharge is stated to be "by any other act which will discharge a simple contract for the payment of money". Was the oral declaration of the plaintiff that he wished to make a donation of the note such an act as would discharge a simple contract for the payment of money? The answer to that question is clear. We quote Corbin on Contracts, Section 1240:

"A mere oral statement by a creditor to his debtor that the debt is discharged and the debtor released is not legally operative as a discharge. The creditor can disregard such statement and get judgment for the amount of the debt. This seems to be true, without regard to the particular form of words that the creditor uses, and in spite of the fact that the creditor is proved to have made the statement with donative intent. He may say that he gives him the debt or the money; or he may promise him (without consideration) that he will never insist on payment or will never sue for the money."

2. " 'Holder' means the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof." Section 401.-191.

■ Under the terms of the negotiable instruments law it is clear that the defendant was not discharged from his responsibility upon the note by the conversation had with plaintiff. Defendant's answer alleged that the plaintiff agreed that the note would be rescinded and cancelled and returned to the defendant as a gift from plaintiff. For purposes of the above discussion it has been assumed that there was identity of legal personality between defendant and Gospel Revival Hour. However the evidence showed that Gospel Revival Hour was a not-for-profit corporation and that plaintiff desired to make a gift to the latter corporation. Accordingly the defendant's evidence not only fails to sustain the allegations of his answer but actually negates the factual basis upon which he has chosen to rest his defence. And in any event there was no gift of the note to Gospel Revival Hour because there was no delivery of the same by the intending donor.

As there was no evidence of any defence to the note, plaintiff's motion for a directed verdict on the note should have been honored.

### Count II.

The contract provided: "Failure by Client to make any of the payments specified herein in full and on or before due dates shall cause this Contract to be terminated immediately, otherwise, this Contract may be terminated by either Party upon receipt of two weeks written notice of cancellation." It may be added that the framing of the contract was the work of plaintiff and that when the contract was executed in October 1963 defendant was twenty-one months delinquent in payment upon the note, the subject of Count I. Plaintiff did not consider the defendant "the best of pay" and inserted the provisions for advance payments "because of past delinquencies" of defendant.

■ Plaintiff maintains that defendant's failure in November 1963 to pay in advance a third weekly contractual payment was a breach of the contract and that a party who breaches a contract cannot take advantage of his breach to relieve himself of his contractual obligations. It is true that ordinarily a material breach by one party to a bilateral contract has the simple effect of relieving the opposite party from the duty of further performance; that is an elementary part of the law of implied conditions in contracts. Whether it has other legal effects depends upon the express terms of the contract.

■■ Among the assignments of error in his motion to set aside the verdict or for new trial, plaintiff contends that the construction of the contract was a question for the court and hence that the determination of whether the contract provided that it should be terminated immediately upon failure to make the advance payment "should not be determined by the jury but by the court". Looking at the words of the clause in question it is difficult to see how there is any problem of construction. A more precise statement of potential cause and effect can scarcely be imagined. However plaintiff finds an inconsistency in the terms of the contract in that it provides also that either party may terminate "upon reeipt of two weeks written notice of cancellation". We fail to see how provision for an alternative method of termination renders ambiguous the first stated method. We agree with plaintiff that construction was for the court—if there was anything in need of construction. In any event there was no fact question to be submitted to the jury.

■ The termination clause in question is no doubt unusual; however it is not unique. As long as the arrangement here remained wholly executory defendant had the power to prevent the accrual of any duty on his part by the simple exercise of unilateral will not to make any advance payment. In this respect the situation is the same as if by the terms of the agreement the defendant had reserved the power to cancel the agreement at any time. In such a case the problem is essentially one

of consideration—did the promise of defendant, the duty of performance of which he could avoid by the exercise of will, constitute sufficient consideration for the promise of the other party? If not, there was no contract. See American Agricultural Chemical Co. v. Kennedy, 103 Va. 171, 48 S.E. 868. If the person who has reserved such a power to cancel has himself partially performed then the requirement of consideration has been satisfied and a contract exists. But that very contract still retains for such a promisor the privilege to cancel.

"It is not infrequent that one of the parties to a contract expressly reserves a power of discharging or terminating a contract after a certain period or on certain conditions. His subsequent exercise of this power operates as a discharge, and it is in one sense a discharge by mutual agreement; the power was created by mutual agreement, but its final exercise is a unilateral act, and may, at the time, be very obnoxious to the other party. * * * The exercise of an expressly reserved power of discharge or termination usually operates prospectively only, without affecting rights arising out of a part performance already rendered. An employer or his employee or both of them may reserve power of terminating the employment; services previously rendered must be paid for as the contract provided." Corbin Cases on Contracts (3rd.ed.) 987.[3]

In our present case the parties have not agreed simply that one or the other shall have the privilege of terminating the contract; unless one does not equal one in the English language, they have agreed that the contract shall be no more upon the happening of a named event. If parties agree that the happening of that event shall work a change in their legal relations it is certainly their privilege to do so as long as freedom of contract exists. Until some public policy is violated, the validity of such a contractual arrangement will be sustained, no matter how unusual or bizarre.

■ Plaintiff seems to argue that, since failure to make an agreed payment was a breach, that omission could not operate to terminate the contract and to relieve defendant of his responsibilities thereunder. In other words plaintiff says that breach and termination could not be coincident. There appears to be nothing in logic which requires that conclusion. We can detect nothing violative of public policy in a contractual arrangement which would transform what would otherwise be, simpliciter, a breach of contract into a holocaust extinguishing every vestige of right and duty under the contract.

Plaintiff's verdict-directing instruction No 6 carried the qualification "unless you believe plaintiff is not entitled to recover by reason of Instruction No. 7". Defendant's verdict-directing Instruction No. 7 submitted to the jury the question of the *existence* of the contract provision relating to termination upon failure to make an advance payment and the question of the failure of defendant to make the third weekly payment. Neither the wording of the contract nor the failure of defendant to make the third payment was in issue. Both were established by the admissions and the evidence of both parties. Thus the court in effect directed a verdict for defendant. Such a verdict was returned. Accordingly the verdict of the jury and the judgment entered thereon are strictly in accord with what we have above indicated should have been the construction given to the contract by the trial court had that court passed upon the matter of construction. The error was harmless. Judgment as to Count II was for the right party.

The judgment should be reversed and the cause remanded to the circuit court with directions that as to Count I the judgment be in favor of plaintiff and that as to Count II the judgment be in favor of defendant.

3. Here plaintiff had no claim for restitution. Defendant had paid for all services rendered him up to the time of failure to make the third advance payment.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, the judgment is reversed and the cause remanded to the circuit court with directions that as to Count I the judgment be in favor of plaintiff and that as to Count II the judgment be in favor of defendant.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.