Claude C. COOPER, Executor of the Estate of John Robert McCall, Respondent,

v.

Jacob and Louise JENSEN, Appellants.

No. 25311.

Kansas City Court of Appeals.

Missouri.

Dec. 1, 1969.

J. William Blackford, Blackford & Wilhelmsen, Kansas City, for appellants.

Cornelius Roach, III, Donald L. Mason, Kansas City, for respondent.

SHANGLER, Judge.

Appellants Jacob and Louise Jensen filed a claim for $20,000 in the Probate Court of Clay County against the Estate of John R. McCall, deceased. The claim, which was

based upon an alleged contract between the Jensens and McCall, was allowed after a hearing. This order was appealed to the Circuit Court by the Executor, Claude C. Cooper, on behalf of the Estate. A jury disallowed the claim and judgment was entered for the Estate. Thereupon, the Jensens took their appeal to the Supreme Court. On motion of the executor, the appeal was transferred to this court because it was not shown that the amount in dispute exceeds $15,000. Apparently, there had been no evidence adduced at the trial tending to prove that the net value of the assets of the Estate available to the executor for the payment of any judgment in favor of appellants is in excess of $15,000.

Jacob and Louise Jensen, man and wife, and John R. McCall, a single man then about 84 years of age, subscribed to a written "Contract", dated May 28, 1963. Its salient terms were:

"WHEREAS, it is the intention of the first party to make his home with the second parties upon the conditions hereinafter set out, it is by the parties now agreed as follows:

"In consideration of the sum of One Dollar ($1.00), to the second parties paid by the first party, the receipt of which is hereby acknowledged, the second parties agree that during the life time of the first party, or for that term hereinafter set out, they will furnish a home for the first party in their home in Clay County, Missouri, treating this first party as a member of the family, the meaning of which is that they will furnish his food, laundry, bedclothes, afford him the access to such parts of the house as he may desire except their bedroom, giving him free run of the property, except he is not to have any say in the management of the same, and during which time he shall pay the sum of $5.00 per month during the term of this contract.

"This contract is to last during the life of the first party and in the event the second parties have furnished the above items and services, the first party does agree that upon his death he will have by will provided and here represents he will have available for payment, the sum of Twenty Thousand Dollars ($20,000.-00) to said second parties, jointly, as husband and wife, and he represents that he has this same day executed a will leaving said parties the sum of Twenty Thousand Dollars ($20,000.00), conditioned upon their faithful performance of this agreement.

"In the event during the life time of this contract, the first party's physician shall advise him that for his best care and treatment he should be confined to a hospital or other facility, then that event shall not be a violation of the obligations of the second parties to this contract.

*"Either party may cancel this contract at any time they desire,* however, in the event the first party cancels this contract, then first party shall be obligated to pay for the time he has been in the home of second parties, at the rate of Eighty Dollars ($80.00) per month." (Emphasis added.)

On that same day, May 28, 1963, Mr. McCall began living in the Jensen home where he remained, intermittently, until October 5, 1963. On August 26, 1963, some three months after the execution of the writing, he was admitted to the North Kansas City Memorial Hospital for surgery on his urinary tract. On September 16, 1963, he was discharged and returned to the Jensen home. Some three weeks later, on October 5, 1963, he was readmitted to the hospital for surgical repair of an inguinal hernia. It seems to have become apparent to him that henceforth he would require continuous nursing care. Upon discharge from the hospital once again, therefore, and upon the advice of his attending physician, Dr. John M. Williams, he decided to enter the Odd Fellows' Home where such care was available. He remained there continuously until his death in March of 1965.

After he had taken up residence with the Jensens, Mr. McCall executed his Last Will and Testament, dated July 31, 1963. Paragraph II provided, in part:

"I have entered into a contract with Jacob and Louise Jensen, the terms and the conditions of which are made a part of this will by reference, and on the condition that the terms of that contract are in force and effect as of the date of my death, I devise and bequeath to Jacob Jensen and Louise Jensen, jointly, as husband and wife, either or the survivor, the sum of Twenty Thousand Dollars ($20,000.00)."

On December 12, 1963, while interned at the Odd Fellows' Home, Mr. McCall executed a subsequent will which neither made any bequest to the Jensens, nor mentioned them. By January of 1964, his mental condition, previously manifested generally by lapses of memory, deteriorated to the extent that he was adjudicated an incompetent by the Clay County Probate Court. In March of 1965, after an internment of seventeen months in the Odd Fellows' Home, Mr McCall died there. His will of December 12, 1963 was admitted to probate and Mr. Cooper was appointed its executor. The Jensens filed their claim against the McCall estate for $20,000, and it has eventually become the subject of this appeal.

Appellants raise a spate of alleged trial errors. To begin with, they doubt our jurisdiction. They argue (a) As no exceptions were filed by the Estate to any action taken by the probate court, there was nothing for the circuit court, as an appellate court, to determine, and that judgment which we now review is a nullity; also, (b) As neither pleadings nor formal defenses were made in the probate court, there was nothing for the circuit court to determine, and, inferentially that court had no power to submit to the jury issues, among them the affirmative defense of cancellation, which was not formally pleaded, and, (c) "The executor preserved nothing by the affidavit for appeal for the circuit court to acquire jurisdiction." We consider these points together.

Some of the questions thus raised are quickly dispelled when it is understood that the formal strictures of the Rules of Civil Procedure do not apply to cases originating in the Probate Court or on appeal therefrom to the Circuit Court. Lenhardt's Estate v. Lenhardt, Mo.App., 322 S.W.2d 170, 173. Malone v. Adams, Mo. App., 362 S.W.2d 95, 97, 98. The application of those rules is explicitly confined to proceedings in the Supreme Court, Courts of Appeals, Circuit Courts, and Courts of Common Pleas. Civil Rule 41.02, V.A.M. R. For instance, no answer is required as a responsive pleading to a claim against an estate filed in Probate Court. The executor may, nonetheless, "interpose any defenses whatsoever that may exist against any demand" and undertake to prove them. Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150, 155. It was not essential, therefore, that the Estate plead the affirmative defense of cancellation in either the Probate Court or Circuit Court (as might otherwise have been required by Civil Rule 55.10, V.A.M.R.) in order to submit that issue to the jury in the trial of the appeal in the Circuit Court. Morris v. Retz, Mo. App., 413 S.W.2d 544, 546. The case of Bice v. Birk, Mo.App., 435 S.W.2d 734, cited by appellant, involves an appeal to the Circuit Court from the Magistrate Court, and has no necessary relevance to the problems here posed.

The jurisdiction of the circuit court on an appeal from the probate court is derivative. It is "no greater and no less than that which the probate court might itself have lawfully exercised". In re Franz' Estate, Mo., 372 S.W.2d 885, 903. And, although Sec. 472.160 [2] specifically provides that no motion to modify or vacate an order of the probate judge is necessary to appeal from that order, Sec. 472.250, providing for a hearing, trial and determination de novo in the circuit court, is held to be "premised upon a prior hearing,

trial and determination in the probate court and contemplates the relitigation of a matter theretofore litigated and fought out in the probate court * * *". In re Mills, 349 Mo. 611, 162 S.W.2d 807, 811; State ex rel. Kinealy v. Hostetter, 340 Mo. 965, 104 S.W.2d 303, 307. Thus, appellants' contention that because formal exceptions to the rulings of the probate judge were not made, the circuit court acquired no jurisdiction over an appeal of the issues actually presented and contested, is palpably untenable. The cases cited by appellants in support of that specific contention, In re Mills, supra, and In re Nelson, 237 Mo.App. 28, 166 S.W.2d 333 involved exceptions to final settlements, and are not in point. Those cases reflect the traditional practice, then extant, of requiring objections to improper items in settlements to be made and preserved by written exceptions presented to the probate court. These exceptions served not only to frame the issues in the probate court and, hence, upon appeal to the circuit court, but also had the effect of setting aside the order approving the settlement. Pillman v. Hampe, 335 Mo. 910, 75 S.W.2d 582, 584; See, also, In re Thomasson's Estate, 355 Mo. 274, 196 S.W.2d 155, 157, 170 A.L.R. 1170. Usage, however, has not extended the requirement of written exceptions to claims filed against an estate.

■ In determining whether it will exercise its jurisdiction on appeal, the circuit court must first conclude that an issue was presented to the probate court respecting that particular matter. That determination may be made from the information contained in the record. In re Nelson's Estate, supra, 166 S.W.2d p. 338. As to a demand against the estate, it is the demand exhibited, itself, which, if controverted, determines the issues presented. In re Thomasson's Estate, supra, 196 S.W.2d p. 157. It is clear that appellants' claim for $20,000 against the Estate was based on that "contract" between them and Mr. McCall which was exhibited with their de-

mand. Their entitlement to payment from the Estate by virtue of their full performance under its terms was the only issue presented to the probate court, and, as the transcript of the testimony presented there discloses, the only issue tried. It was precisely that issue which was tried in the circuit court and it was that trial which we now review. We conclude that the appellate jurisdiction of the circuit court was validly exercised as to it.

■ In addition to the points we have already discussed, appellants contend aphoristically, "(t)he executor had one trial on the facts and that is all he is entitled to". By that we understand to mean, as the probate court heard evidence and decided the issue made up by the controversion of their demand, the Estate was not entitled to yet another determination of the facts in the circuit court. This ignores the express provisions of Sec. 472.250 which authorized a trial de novo upon such an appeal. The case cited by appellants, Weisguth v. Burke, Mo.App., 138 S.W.2d 689, has nothing to do with probate appeals and is not remotely in point.

■ Appellants also assert under Points and Authorities, but without argument or exposition of the two cases they cite, that "(t)he executor preserved nothing by the affidavit for appeal for the circuit court to acquire jurisdiction". Appellants have thereby preserved nothing for review. We do not consider this point.

■ Appellants dispute that Claude C. Cooper, Executor, had standing as an "interested person" to make the appeal from the probate court because "(a)n executor is not one of the exact persons mentioned" in the statute. It is true that executors are not specifically included among those defined as "interested persons" in Sec. 472.-010 [15]. That subsection also provides, however, "This meaning may vary at different stages and different parts of a pro-

ceeding and must be determined according to the particular purpose and matter involved". Sec. 472.160 provides:

"1. Any interested person aggrieved thereby may appeal from the order, judgment or decree of the probate court or of the judge thereof in the following cases:

"(1) On all claims against an estate exceeding twenty dollars."

These sections integrally construed, have been held to extend to personal representatives of estates "a right to appeal whenever their concern appears necessary for the protection of the estate, they being the 'interested persons'". In re Dugan's Estate, Mo.App., 309 S.W.2d 137, 144; In re Hill's Estate, Mo.App., 435 S.W.2d 722, 724. This right to appeal is subject to the requirements that one availing himself of it have a pecuniary interest in the estate under administration (Hines v. Hook, 338 Mo. 114, 89 S.W.2d 52, 55; State ex rel. Goodloe v. Wurdeman, 286 Mo. 153, 227 S.W. 64, 67), and if an executor, he must be aggrieved in that capacity. In re Clark's Estate, Mo.App., 213 S.W.2d 645, 651; Love v. White, 348 Mo. 640, 154 S.W.2d 759, 760. Appellants do not direct us to any other specific reason why we should hold that Claude C. Cooper, as executor, was not authorized to make the appeal. In support of their general contention, they cited two cases, but without discussion or argument. The first, State v. Davis, 240 Mo.App. 411, 216 S.W.2d 155, deals with the right to appeal of one claiming heirship and is not helpful. The other, in re Fusz' Estate, Mo., 397 S.W.2d 595, 16 A.L.R.3d 1271 is not analogous. That held that executors were not aggrieved parties for purposes of appeal when the review sought was that of a probate court order refusing them permission to make a certain partial distribution of estate income. The order did not affect the executors in their official capacities, but only the distributees, who had acquiesced in the order. Appellants Jensen, however, made claim as creditors of the estate, not as distributees.

The personal representative is charged with the duty of taking possession of all the personal property of the decedent (Secs. 473.260, 473.263) and must defend all actions brought against him. Secs. 473.270, 473.273. He holds the property as a trustee, for the benefit of the creditors, legatees, heirs and distributees. Rone's Estate v. Rone, Mo.App., 218 S.W.2d 138, 145. When all those for whose benefit he holds the property have already joined, or been made parties to, the litigation and thus have a right to control it, the executor may not have such an interest in the subject matter as to authorize him to appeal. Love v. White, supra, 154 S.W.2d p. 760; Rone's Estate v. Rone, supra, 218 S.W.2d p. 145. From the record before us, we do not know if there were any other creditors of the estate. The persons entitled to take under the will were known. Neither creditor nor legatee, however, participated in the litigation in such capacity. From the outset, Mr. Cooper, as executor, alone controlled the litigation. By contesting the creditor's claim, the executor was in the discharge of the trust committed to him. For, if it should be determined that the allowance of $20,000 was unlawful, he will have benefitted those interested in or entitled to participate in the assets or corpus of the estate. Under the circumstances of this case, we do not know who could have been the interested person aggrieved by the probate court order of allowance if the executor was not. To deny him the right of appeal would be to deny him the object subserved by an appeal, that of "get(ting) at the very right of the cause". First Trust Co. v. Myers, 239 Mo.App. 403, 188 S.W.2d 519, 521. Statutes governing appeal from judgments of the probate court are to be liberally construed, as the law favors the right to appeal. State ex rel Reis v. Nangle, Mo.App., 349 S.W.2d 508, 513. A personal representative has been held to be an interested person aggrieved authorized to appeal from an order of the probate court allowing exorbitant fees to an attorney (First Trust Co. v. Myers, supra, 188 S.W.2d p. 521), or to an

inheritance tax appraiser (Trieseler v. Ratican, 237 Mo.App. 490, 173 S.W.2d 595, 597), and a statutory allowance to a widow. For the reasons we have given, Claude C. Cooper, in his capacity as executor, was an interested person aggrieved and was authorized to take the appeal from the probate court judgment.

Appellants raise several additional points concerning the alleged impropriety of certain instructions submitted to the jury. We do not reach a consideration of them. We have concluded, instead, that the trial court should have sustained the executor's Motion for Directed Verdict at the Close of All the Evidence because the written instrument of May 28, 1963 was void and unenforceable on its face for lack of mutuality as to decedent McCall's unperformed, executory obligation to bequeath $20,000 to the Jensens and also because Mr. McCall, during his lifetime and while the "contract" was still executory, exercised his right to cancel his obligation to make the bequest. We have further concluded that appellants have not met their burden of proving that they performed their promise.

■ Our courts have held that the essential elements of a contract are (1) parties competent to contract, (2) a subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. State ex rel. St. Louis Car Co. v. Hughes, 348 Mo. 125, 152 S.W.2d 193, 198; Bengimina v. Allen, Mo.App., 375 S.W.2d 199, 202; 17 C.J.S. Contracts p. 545. By those criteria, the instrument of May 28, 1963 was not an enforceable agreement because it was lacking in consideration and so, devoid of mutuality of obligation. That is to say, neither party came under any duty to the other, as neither made a binding promise to the other. It provided that *"(e)ither party may cancel this contract at any time they desire * * *"*. Therefore, Jensens' promise to furnish Mr. McCall with a home and the other specified services for as long as he lived and to receive from him $5 per month for doing so, *unless he or they cancelled the arrangement,* was merely illusory, because its performance or nonperformance rested unconditionally with the pleasure or future will of the Jensens. Mr. McCall retained a similar unlimited option to perform or not perform his promise to bequeath so that his, also, was a promise in form only, and equally illusory. Nothing that either party promised was exempt from their respective power to cancel. Each had it always in his power to keep his promise and yet to escape performance of anything detrimental to himself or beneficial to the promisee. Neither of these apparent promises is enforceable against the one(s) making it, nor is either operative as a consideration for a return promise. Restatement of Contracts, Secs. 77–81; Corbin, Contracts, Vol. 1, pp. 627, 628; Williston, Contracts, Vol. 1, 3d Ed., pp. 396–397; Hudson v. Browning, Mo., 174 S.W. 393, 395. Therefore, the agreement of May 23, 1963, when signed, was not an enforceable bilateral contract and remained unenforceable to the extent that it remained executory. To the extent that a party-promisee performed under it, however, the consideration theretofore lacking was supplied, and to that extent, the party-promisor was bound. Martin v. Ray County Coal Co., 288 Mo. 241, 232 S.W. 149, 151; 17 C.J.S. Contracts pp. 806, 807; Annotation, 137 A.L.R. 919. Despite any partial performance, however, the respective parties, as promisors, were not bound by those promises made, but not yet acted upon by the other, because of the continuing lack of consideration for them. As to the future, each retained the power to cancel the agreement. Burns v. Beeny, Mo. App., 427 S.W.2d 772, 775, 776; Middleton v. Holecroft, Mo.App., 270 S.W.2d 90, 93.

■ The question becomes one of the quantum of performance. Appellants' claim for $20,000 presupposes that they had fully performed; that is, that they had furnished Mr. McCall the defined services

from May 28, 1963 until he died, unless such performance was otherwise excused. (We expressly do not pass on the validity of the remedy appellants have chosen to enforce their claim.) From the evidence, we find, as a matter of law, appellants failed to make such proof. A jury could reasonably have found that the appellants received Mr. McCall into their home on May 28, 1963 and gave him the prescribed care until October 5, 1963, when he returned to the hospital for the second time. A jury could even have found that he entered the Odd Fellows' Home on October 22, 1963 upon the advice of his physician and remained there, upon such advice, until his death, some 17 months later, and that appellants' obligation to furnish the services during that period was excused by the terms of the instrument. But the instrument not only expressly required Mr. McCall to pay appellants only $5 per month for such services as long as his promise to bequeath them $20,000 remained in effect, it *impliedly required appellants to accept only that amount*. It is essential to imply such a term in order to give effect to the express terms of the agreement and to the intention of the parties. Williston, Contracts, Vol. II, 3d Ed., pp. 33–36. This bilateral agreement, unenforceable on its face, contained Mr. McCall's alternative promises (actually, as the promises were illusory, they are best characterized as "offers") to pay appellants either $5 per month and bequeath them $20,000, or $80 per month without bequest. The furnishing of services by appellants was consistent with the acceptance, by performance, of either of these offers. Only by evidence of the amount accepted by appellants in monthly payment could distinctive proof be made as to which alternative offer appellants had actually accepted.

In order to support their theory of recovery—an action for $20,000 damages for breach of contract to make a bequest in that amount—appellants had the burden of proving that they had accepted only $5 per month from Mr. McCall for such services.

(Once again, we do not assess the validity of the remedy appellants employ.) Appellants offered no evidence on this point. Respondent's proof was that between May 28, 1963 and October 5, 1963, that period during which Mr. McCall lived with the Jensens, he wrote checks payable to either Jacob or Louise Jensen, paid from his account, totaling $1715. One, dated August, 1963, for $60, was marked "for room and board through August" and "Paid in full". Another, also dated August, 1963, for $60 was marked "for room and board for September '63". Yet another, dated September, 1963, for $30 was marked "September 16 to October 1, 1963, room and board". Between August, 1963 and October 12, 1963, there were additional checks issued them by Mr. McCall, but bearing no designation as to the reason for payment. Three of them were in the amount of $5, one each for $25, $30, $35 and $50, respectively. Whatever else this evidence may have tended to prove, it was not the acceptance of $5 per month by appellants during the period of their alleged performance. That proof was entirely lacking and because of it, appellants failed to establish their performance and respondent's breach.

■ We have concluded as well that appellants made no submissible case because the evidence established as a matter of law that Mr. McCall, during his lifetime, and while the agreement was still executory, effectively cancelled his obligation to make the bequest. By the agreement of May 28, 1963, Mr. McCall not only obligated himself to bequeath the Jensens $20,000, "conditioned on their faithful performance of this agreement", but represented that he had in fact executed his will containing such a bequest. The will containing that provision was executed, in fact, on July 31, 1963. Thereafter, on December 12, 1963, while living at the Odd Fellows' Home, he executed another will which made no mention of the Jensens and made no provision for them by bequest or devise. Mr. Mc-

Call's failure to make provision for such bequest was a clear manifestation of the exercise of his unconditional right to cancel the obligation which remained executory, as long as he was alive. This, although the agreement did not impose upon either party the duty of manifesting the exercise of that right. The agreement provided: "Either party may cancel this contract at any time they desire." It obviously intended an unconditional power to avoid the contractual obligations, one to be exercised "at will", untrammeled by any requirement to give notice. It was this unconditional power to avoid obligations of the contract that rendered them illusory to the extent that they remain executory. Corbin, Contracts, Vol. 1A, pp. 79–81; Williston, Contracts, Vol. 9, 3d. Ed., Sec. 1017A. p. 154, footnote, Cf. Burns v. Beeny, supra, 427 S.W.2d pp. 775–776.

There was no evidence that appellants had suffered any detriment or that Mr. McCall had derived any benefit by the performance of appellants after the date of cancellation, December 12, 1963, until Mr. McCall died, in March, 1965. The positions of the parties had not changed. Mr. McCall never returned to the Jensen home and the Jensens furnished him no services during that period. Mr. McCall's obligation to bequeath $20,000 to the Jensens had been effectively cancelled.

■ Appellants' final point is that the trial court erred in admitting into evidence the December 12, 1963 will of Mr. McCall because the agreement sued on was "a separate instrument" and since the will did not mention the contract, it was irrelevant. Our discussion of the previous point makes ample answer. The December 12, 1963 will effected cancellation. It was relevant evidence.

The judgment is affirmed.

All concur.