L & K REALTY COMPANY, Appellant,

v.

R. W. FARMER CONSTRUCTION COMPANY, Respondent.

No. WD 32419.

Missouri Court of Appeals, Western District.

April 27, 1982.

George Schwegler, Jr., Jeffrey S. Henry, Kansas City, for appellant.

John W. Cowden, Elizabeth D. Badger, Kansas City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

This suit between land owners was the consequence of dispute over performance of agreements for development of mobile home residence facilities on adjacent properties owned by L & K Realty Company and Farmer Construction Company. The court, after a bench trial, denied L & K relief on its claims for contract rescission and damages and L & K appeals. Affirmed.

This controversy stems from two agreements made by L & K and Farmer on February 1, 1974, a lease and an agreement to convey an easement. The agreements were the culmination of plans by Farmer to develop a mobile home park on some 47 acres of land along Valley View Road in Jackson County. From the record, an inference arises that access to the Little Blue River was essential to development of the trailer park as a means for disposing of sewage effluent discharge. L & K owned land along Valley View Road opposite the property Farmer intended to develop and offered Farmer a feasible route to the Little Blue.

Farmer's president submitted to L & K a proposal which was ultimately reduced to the agreements now at issue. Although the agreements were lengthy and complex, the broad outline of what the parties expected to accomplish may be concisely described.

By the lease agreement, Farmer undertook to develop a mobile home park on the L & K land complementing the project to be constructed by Farmer on its own land. A sewage disposal plant to serve both projects was to be constructed by Farmer on L & K land. Construction costs for the trailer parks and the sewage facilities were to be borne entirely by Farmer. Under the easement agreement, Farmer was granted the right to construct and permanently maintain the sewer plant and lines on L & K land. Once the trailer park on L & K land were completed and opened, Farmer agreed to operate it and pay L & K 12 percent of the gross receipts. In the event Farmer failed to develop the L & K trailer

park, absent excuse of that obligation under other provisions of the agreement, L & K was entitled to recover a monthly rental and taxes.

At the date of the agreements, February 1, 1974, Farmer had already acquired a special use permit from Jackson County for a mobile home park on the Farmer tract effective for a ten-year period expiring in 1983.[1] The L & K property, however, was not zoned for operation of a trailer park and that fact was recognized in the lease agreement. As lessee, Farmer agreed to apply for appropriate zoning and, when obtained, to proceed diligently to construct the L & K trailer park. Two years were allotted to obtain the zoning, failing which, the lease automatically terminated. The lease agreement assumed that maintenance of the disposal plant on L & K land would survive termination of the lease. L & K reserved the privilege to connect to that facility for its own purposes if the trailer park were not built by Farmer on the L & K property. Alternatively, L & K was entitled to relinquish the connection rights and if L & K chose this course, Farmer was obligated to pay L & K $5000.00.

By their terms, the lease agreement and the easement agreement were neither interdependent nor conditioned on mutuality of performance. A failure by Farmer to obtain the zoning on the L & K land resulted only in provision to L & K of sewer connections or entitlement to payment of $5000.00. Failure by Farmer to construct the trailer park once zoning were obtained on L & K property resulted in an obligation on Farmer to pay rent and taxes. In neither situation was Farmer's right under the easement dedication reduced or impaired.

The primary condition which the lease agreement imposed as a prelude to accrual of any rights or liabilities under the lease agreement was the commencement of construction and development of the trailer park by Farmer on its own land by September 1, 1974. The critical language of the agreement was as follows:

"Section 6. COMMENCEMENT OF CONSTRUCTION ON FARMER TRACT: Lessee covenants and agrees to commence, on or before September 1, 1974, the good faith construction and development of a mobile home and trailer park upon the Farmer Tract. In the event Lessee fails to do so, this Agreement shall automatically terminate and neither party shall have any rights, obligations or liabilities under or arising out of this Lease Agreement."

The easement was executed by L & K August 7, 1974 and was recorded September 13, 1974. The sewage disposal plant and lines were constructed on L & K land within the boundaries of the easement and Farmer developed the trailer park on its own land. The trial court found, however, that no construction was commenced on the Farmer tract before September 1, 1974 and that the lease agreement therefore terminated in accordance with the above Section 6, on September 1, 1974.

The evidence was undisputed that no application to rezone the L & K land was ever filed and no construction of a trailer park on L & K property was ever commenced. From a practical view, the basis for L & K's complaint is that the agreements with Farmer produced no benefit to L & K but resulted in appropriation of L & K land for installation of the sewer plant and sewer lines.[2]

---

1. The February 1, 1974 agreement contains language inferring that Farmer did not have title to the tract west of Valley View Road on that date. From this record, it cannot be ascertained how Farmer was able to secure the special use permit as to land not then owned and for which no sewage disposal facilities were available until the agreement with L & K was negotiated.

2. Construction of the Little Blue Sewer District project in 1976 resulted in acquisition from L &

K by public authority of the fee title underlying the sewage disposal facilities which Farmer constructed. Apparently, additional ground owned by L & K was also taken for improvement of the Little Blue channel. Connection rights of Farmer and L & K to the sewer plant as well as the easement were not affected. The record does not disclose what compensation was paid to L & K for the property taken by negotiation in lieu of condemnation.

In a three-count petition filed in 1980, L & K sought rescission of the lease agreement and the easement, a count which assumed linkage of the two agreements, or, alternatively, accrued rent and taxes due under the lease, or, alternatively damages for breach of the lease agreement to construct the L & K trailer park. The second and third counts were based on the assumption the lease agreement was not terminated by operation of Section 6. As to this last alternative, the measure of damages was contended to be the difference in value of the L & K property with and without the trailer park as bargained for in the agreement. The trial court found all issues in favor of Farmer on the ground that the lease agreement had terminated September 1, 1974 and that Farmer and L & K had neither benefits nor obligations under the lease thereafter.

## I

In its first point on appeal, L & K contends the undisputed evidence showed the parties recognized the continued existence of the lease agreement after September 1, 1974 and that the court's judgment was in error for failing to accept the construction of the agreement the parties themselves had adopted. The evidence on which L & K relies included correspondence from L & K to Farmer between May 5, 1975 and May 1, 1979 demanding performance of the lease terms, an acknowledgment by counsel for Farmer in 1976 that the lease was still in force and a tender of payment by Farmer in the amount of $5000.00 for the unused sewer connections. This argument assumes Section 6 of the lease would otherwise have been effective to terminate the agreement upon failure by Farmer to commence construction by September 1, 1974 but relies on the proposition that interpretation which parties place on an agreement will be binding on them. Cited by L & K as authoritative for this rule are *Lene v. M. F. A. Mutual Insurance Company*, 301 S.W.2d 874 (Mo.App.1957) and *Norman v. Durham*, 380 S.W.2d 296 (Mo.1964).

The cases cited are not applicable here because each involved ambiguous contract terms which necessitated recourse to construction and interpretation. Section 6 of the subject lease has no such infirmity but is plain upon its face. The rule which binds parties to the construction they adopt in the practical recognition of an agreement's terms applies only when the proper construction of a contract is in doubt. *Laughlin v. Terry*, 110 S.W.2d 838 (Mo.App. 1937); *Ferguson Sewer District v. Emerson Electric Manufacturing Co.*, 187 S.W.2d 774 (Mo.App.1945). When the language of a contract is plain, there can be no construction because there is nothing to construct. *In re Estate of Lewis*, 492 S.W.2d 385 (Mo. App.1973).

Actions by the parties after execution of a contract tending to show an interpretation by them at variance with the plain terms of the contract will not control and the contract will be applied as written. *Willman v. Beheler*, 499 S.W.2d 770 (Mo. 1973); *Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833 (Mo. banc 1960). The courts will not overthrow the plain and unambiguous terms of a written contract because of an erroneous construction the parties have adopted. *Leggett v. Missouri State Life Insurance Company, supra; Ferguson Sewer District v. Emerson Electric Manufacturing Co., supra.*

Assuming for the purpose of resolving the first of L & K's points that the finding by the trial court rested on substantial evidence and was not against the weight of the evidence on fact issues, the failure by Farmer to commence construction by September 1, 1974 terminated the lease agreement in accordance with Section 6 and neither party had any rights, obligations or liabilities thereunder after that date. The court correctly applied the law in so holding.

## II

In its second point, L & K reaches the heart of its complaint as summarized earlier in this opinion. L & K observes that the consideration to it under the lease agree-

ment was the prospect that Farmer would secure rezoning, build the trailer park and pay rental to L & K, all of which benefits were lost because Farmer defaulted in commencing construction. L & K then argues that the critical Section 6 was a forfeiture provision established for its benefit. On this premise, L & K contends that the forfeiture on default by a party becomes operative only at the option of the party for whose benefit the covenant was inserted and who is injured by the default and that it was for L & K to decide whether or not Section 6 should be invoked to terminate the lease. Absent that application of the contract language, L & K has lost the profit of its agreement and is left with a sewage treatment plant on its land.

The difficulty with L & K's contention is that it depends on characterization of Section 6 as a forfeiture clause. In fact, it is not, but is simply a termination clause, with substantially different consequences. The term "forfeiture" is a comprehensive term which means a divestiture of specific property without compensation. *Julian v. Burrus*, 600 S.W.2d 133, 141 (Mo. App.1980). A forfeiture imposes a loss by the taking away of some preexisting valid right without compensation. *Swain v. Maxwell*, 355 Mo. 448, 196 S.W.2d 780, 785 (1946). The contract section in issue here did not purport to impose any sanction for default nor did it create any privilege for either party to invoke divestiture of accrued rights. It merely announced that the agreement would end upon a certain condition.

In *Burns v. Beeny*, 427 S.W.2d 772 (Mo. App.1968), the contract provided for termination in the event the client failed to make any of the payments. In holding the provision to be a termination clause, the court stated:

> "If parties agree that the happening of that event shall work a change in their legal relations it is certainly their privilege to do so as long as freedom of contract exists. Until some public policy is violated, the validity of such a contractual arrangement will be sustained, no matter how unusual or bizarre."

In *Swiss-American Importing Co. v. Variety Food Products Co.*, 436 S.W.2d 770 (Mo. App.1968), the contract included the provision, "It is further agreed that should either party sell his business this agreement would be cancelled." The court held the language to specify a termination clause enforceable as written despite the fact that each party thereby had a unilateral right to terminate the contract by selling his business. To like effect was the insurance contract case of *Vail v. Midland Life Ins. Co.*, 108 S.W.2d 147 (Mo.App.1937).

L & K argues that application of the termination clause not only operates to its disadvantage but results in Farmer acquiring the easement for no consideration. As was noted earlier in this opinion, conveyance of the easement to Farmer was in no way dependent upon Farmer's performance of any condition under the lease agreement. In fact, Section 11 of the lease agreement anticipates the prospect that the lease would terminate before its completed term. In that event, the agreement recites that entitlement to usage of the sewer plant and facilities would survive and as covenants running with the land binding upon L & K and Farmer and their successors in title.

In retrospect, L & K may now consider the agreements it made to be disadvantageous because some alternate method of compensation for the easement grant was not included. There is, however, no claim of misrepresentation or overreaching nor does L & K contend the lease and the easement were interdependent under some theory consistent with the language of the contracts which were executed. The plain fact is that those contracts allow the result which did follow. It is too late for L & K now to complain that the bargain was less of a benefit than it anticipated.

### III

In two related points, L & K next contends the trial court erred in finding that no construction had begun on the Farmer tract by September 1, 1974. The arguments to this effect focus first on evidence

that Farmer had initiated procedures as early as March 1974 to obtain permits for construction of the sewage disposal facilities. This, L & K suggests, may be equated with "development" under the Section 6 time schedule, saving the agreement from automatic termination. Secondly, L & K relies on testimony by its witness that the date of actual commencement of construction by Farmer was before September 1, evidence which conflicted with testimony Farmer gave. On this issue, L & K contends the weight of the evidence was in its favor.

As the previous quotation from Section 6 of the lease agreement indicates, Farmer was obligated to commence "construction and development" on the Farmer tract before September 1, 1974, else the agreement terminated. L & K argues that a reasonable construction of the entire agreement demonstrates the intention of the parties to have been that either construction or development was to have been underway by the stated date. L & K then says that application for the sewer permit constituted "development" and since that phase of the work was commenced before September 1, the requirement of the agreement was met even though no work on site was in progress.

Even were it to be assumed that an application for a permit constitutes development, the substitution of "or" for "and" in Section 6 is a material alteration of the agreement. If the terms of a contract are clear and unambiguous, the agreement will be given effect in accordance with its terms and without resort to determination of the intent of the parties. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261 (Mo. banc 1973). The terms as employed in the contract must be given their usual and ordinary meaning and are to be understood in their plain and ordinary sense. *Kroh Brothers Development Company v. State Line Eighty-Nine, Inc.*, 506 S.W.2d 4 (Mo.App.1974). In interpreting contracts, the courts are guided by the well established rules that they cannot make contracts for the parties or insert

provisions by judicial interpretation and that the courts are to determine what the parties intended by what they said and not by what they might have said or what perhaps they should have said. *Ennis v. McLaggan*, 608 S.W.2d 557 (Mo.App.1980).

The provision of Section 6 in the subject lease agreement clearly and unambiguously states that construction *and* development must commence on the Farmer tract before September 1, 1974. Even were the application for sewer permits to be construed as development of the Farmer tract, an application could certainly not be described as construction. The latter was required by the plain language of the agreement and an application for a permit did not meet the condition. On the language of the agreement, the trial court did not err in holding that construction and development did not begin within the time interval despite the evidence that planning for the sewage disposal facility commenced before the terminal date.

Alternatively, L & K contends that if construction and development were required conjunctively by the agreement, there was evidence of construction before September 1 and the trial court's decision to the contrary was against the weight of the evidence. L & K bases this argument on the testimony of William Lowenstein who gave evidence to this effect and also referred to correspondence allegedly supporting his statement of the dates.

The testimony of the principals was in conflict as to when construction did begin. R. W. Farmer testified that it was not until after September 13, 1974, when the amended easement was recorded, that his company was able to obtain financing for the project. He stated that actual work did not begin until late September or early in October 1974.

In a court-tried case, an appellate court may not disturb the trial court's decision on a fact question if the result is supported by substantial evidence and is not against the weight of the evidence. *Leonard v. American Walnut Company, Inc.*, 609

S.W.2d 452 (Mo.App.1980). Before an appellate court concludes that the judgment in a court-tried case is against the weight of the evidence, the reviewing court must entertain a firm belief that the judgment is wrong, giving due deference to the opportunity of the trier of fact to have judged the credibility of witnesses. *Commerce Bank of Poplar Bluff v. Bulger*, 614 S.W.2d 768 (Mo.App.1981). The reviewing court is obliged to recognize that the trial court, sitting as the trier of facts, may disbelieve all or part of a witness's testimony. *D. S. v. H. T. H.*, 600 S.W.2d 698 (Mo.App.1980).

In the present case, the testimony of Lowenstein and of Farmer was in conflict. The trial court chose to believe the dates assigned by Farmer and to disbelieve the testimony of Lowenstein. This it was entitled to do and that result cannot be upset here because this court is not entitled to conduct a de novo review of fact questions. Farmer's testimony was substantial evidence and was sufficient to support the findings which the trial court made.

### IV

In two additional points, L & K contends that termination of the lease agreement under Section 6 did not occur, and the trial court erred in so finding, because Farmer waived any right to declare a forfeiture by acknowledging existence of the agreement after that date and by failure of Farmer to give notice of intention to declare a forfeiture. These contentions are not reached by reason of our prior conclusion that Section 6 is a termination clause to which rules involving forfeiture provisions do not apply.

The judgment is affirmed.

All concur.