MERRILL LYNCH PIERCE FENNER & SMITH, INC. and Goodbody & Company, Petitioners Below, Appellants,

v.

NORTH EUROPEAN OIL ROYALTY TRUST and The Trustees of the North European Oil Royalty Trust, Respondents Below, Appellees.

Supreme Court of Delaware.

Submitted: Sept. 20, 1984.

Decided: March 6, 1985.

John E. James, Potter Anderson & Corroon, Wilmington, for appellants.

Lawrence A. Hamermesh, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellees.

Before HERRMANN, C.J., McNEILLY and MOORE, JJ.

HERRMANN, Chief Justice:

The determinative issue before the Court in this case is whether, before issuing replacement certificates for those lost, stolen or destroyed, a Delaware corporation may require brokerage houses to supply independent credible evidence that they are the beneficial owners of stock registered in their names. We hold with the Court of Chancery that such requirement may be made. Accordingly, we affirm.

I.

In 1929, the North European Oil Corporation (hereinafter "the Corporation") was established as a Delaware corporation for the purpose of oil exploration and development in Europe, primarily in Germany. Subsequently, in return for grants of royalty concessions, the Corporation terminated drilling and exploration activities. All trading of the stock ceased during World War II. At the end of the war, there were attempts to reorganize the Corporation as the owner of royalty rights; however, war-related disruption made it impossible to assemble the number of registered shareholders necessary to establish a quorum for stockholder meetings. In 1957, the Court of Chancery approved the reorganization of the Corporation into the North European Oil Company (hereinafter "the Company"), under an arrangement whereby shareholders of the Corporation were entitled to exchange their Corporation stock for Company stock. Those who failed to do so became holders of non-voting shares in the Company. The directors of the Company were appointed as fiduciaries for unlocated shareholders.

In 1975, in order to make certain tax benefits available to the stockholders of the Company, the Court of Chancery approved a plan for the dissolution of the Company and the simultaneous establishment of the North European Oil Royalty Trust (hereinafter "the Trust"), to which substantially all of the Company's assets were transferred. The Agreement of Trust was duly

executed and filed with the Court of Chancery. Under the Agreement, the Trustees succeeded the Company's directors as fiduciaries for unlocated shareholders.

The petitioners-below, Merrill Lynch Pierce Fenner & Smith, Inc. and Goodbody & Company (hereinafter "the Petitioners"), are brokerage houses listed as record shareholders of common stock of the Corporation. However, the Petitioners have been unable to find the certificates representing the stock registered in their names, and now claim that such certificates must be deemed lost or destroyed. The Petitioners have demanded that the Trustees issue to them, as such record owners, replacement trust certificates representing appropriate units of ownership in the Trust, as well as declared dividends and other payments. Because, in the 1930's, the Corporation's stock certificates were traded in "street name," the Trustees have refused to issue the replacement trust certificates, absent independent credible evidence of beneficial ownership.

In this action brought by the Petitioners to compel the Trustees to issue the replacement trust certificates demanded, the Court of Chancery granted summary judgment in favor of the Trustees. This appeal followed.

## II.

The issue before this Court is governed by the Delaware Uniform Commercial Code provision, 6 *Del. C.* § 8–405(2), under which the Trustees are required to issue the replacement certificates demanded only if the Petitioners have fulfilled the three requirements of § 8–405(2):

Where the owner of a security claims that the security has been lost, destroyed or wrongfully taken, the issuer must issue a new security in place of the original security if the owner

(a) so requests before the issuer has notice that the security has been acquired by a bona fide purchaser; and

(b) files with the issuer a sufficient indemnity bond; and

(c) satisfies any other reasonable requirements imposed by the issuer.

In this case, neither the Trustees nor the Petitioners knows of any bona fide purchasers and none has come forward. The Petitioners have posted a bond to indemnify the Trust should any person present the missing certificates in the future. Having satisfied the first two requirements of § 8–405(2), the sole remaining issues are (1) whether the Trustees have imposed upon the Petitioners "any other reasonable requirement" under § 8–405(2)(c); and (2) whether the Petitioners have satisfied that requirement.

According to the Agreement of Trust, one of the functions of the Trust is to adequately protect the interests of Company shareholders by issuing trust certificates "to such owners, successor owners, or beneficial owners of shares of stock of the Company as may present evidence of ownership or rights in the manner provided by the Trustees...." Similarly, the Agreement provides that the Trustees shall issue trust unit certificates "to such person or persons as may present evidence of ownership or entitlement to shares of stock of the Company.... [and] in connection with the issuance of certificates hereunder, the Trustees may require appropriate proofs of ownership."

Thus, the Agreement of Trust empowers the Trustees to require that the Petitioners supply independent evidence of beneficial ownership before they issue replacement certificates in this case. The Petitioners contend, however, that such requirement is not "reasonable" under § 8–405(2)(c). The Petitioners argue that 8 *Del. C.* § 167 must be read in conjunction with 6 *Del. C.* § 8–405(2); that both require a corporation to issue replacement certificates to a record owner; and that, when the two Statutes are read together, the Trustees' requirement of evidence of beneficial ownership, in addition to record own-

ership and the bond, is not "reasonable." We find this position untenable.

8 *Del.C.* § 167 provides in pertinent part:

A corporation *may* issue a new certificate of stock in the place of any certificate theretofore issued by it, alleged to have been lost, stolen, or destroyed.... [emphasis added]

The two Statutes are consistent; but 8 *Del.C.* § 167 deals with the powers of the corporation, whereas 6 *Del.C.* § 8–405 concerns the rights of shareholders. *See* Folk, *The Delaware Corporation Law,* 171–172 (1972). Clearly, 8 *Del.C.* § 167 is permissive; the corporation may choose to issue replacement certificates to a record owner, but it need not do so. However, 6 *Del.C.* § 8–405(2) is mandatory; it imposes a duty on the corporation to issue replacement certificates when the three requirements are met. *See Glaser v. Texon Energy Corp.,* 5th Cir., 702 F.2d 569 (1983).

The Petitioners also contend that the Trustees' requirement is unreasonable in light of 6 *Del.C.* § 8–207(1),[1] under which an issuer *"may* treat the registered owner as the person exclusively entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner." (emphasis added) We find no merit in this contention. Clearly, the provision of § 8–207(1) is permissive only. Like § 167, it does not impose upon the issuer an absolute duty to deal exclusively with the shareholder of record. The Official Comment to the Uniform Commercial Code [U.C.C. § 8–207(1), Comment 2] notes:

Subsections (1) and (2) are permissive and do not require that the issuer deal exclusively with the registered owner. It is free to require proof of ownership before paying out dividends or the like if it chooses to.

■ Accordingly, we hold that neither § 167 nor § 8–207(1) requires the Trustees to treat the record-owner Petitioners in this

case as parties entitled to the benefits of ownership, or prohibits them from requiring independent evidence of beneficial ownership as a prerequisite to the issuance of replacement certificates. We are not persuaded by the Petitioners' efforts to undermine the reasonableness of the Trustees' requirement under § 8–405(2)(c) by resorting to § 167 and § 8–207(1).

## III.

We find that the requirement imposed by the Trustees upon the Petitioners in this case is reasonable upon several grounds:

■ First, the Petitioners have drawn this Court's attention to other areas of general corporate law, concerning such matters as appraisal rights and corporate governance, which permit a presumption that the shareholder of record is also the beneficial owner of the stock. *See e.g. Olivetti Underwood Corp. v. Jacques Coe & Co.,* Del.Supr., 217 A.2d 683 (1966); *Nellius v. Tampax, Inc.,* Del.Ch., 394 A.2d 233 (1978). However, such presumption may not be extended to a situation in which brokerage houses have held shares for their customers in "street name." *See Keech v. Zenith Radio Corp.,* Del.Ch., 276 A.2d 270 (1971). Here, where brokerage houses traded shares in "street name," it is reasonable to assume that, over the years, the Corporation certificates have been delivered to the true purchasers who, at any point in the future, may present such shares in exchange for trust certificates.

It is reasonable to assume, too, that as the result of the "street name" practice in this case, the Petitioners may not be the beneficial owners of the allegedly lost certificates. On recent occasions, third parties have presented to the Trustees Corporation shares endorsed in blank for which the Petitioners were listed as the owners of

---

**1.** 6 *Del.C.* § 8–207(1) provides:

(1) Prior to due presentment for registration of transfer of a security in registered form the issuer or indenture trustee may treat the registered owner as the person exclusively entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner.

record.[2]  Indeed, in several instances, legitimate holders have come forward with their certificates after the Trustees had already issued replacement shares to the brokerage firms listed as holders of record.[3]  It was in response to these third-party presentations that the Trustees adopted the current policy of requiring credible independent evidence of beneficial ownership by brokerage houses, whereas, theretofore, they deemed adequate only a showing of registered ownership coupled with an affidavit of loss, plus a surety bond.

Second, in addition to the practice of trading in "street name," other factors in the record of this case make questionable the Petitioners' beneficial ownership of the certificates in question.  From 1957 through 1960, the Company notified all record shareholders, including the Petitioners, of the procedures for exchanging their shares.  The Petitioners did not respond.  The Petitioners explain this inaction by noting that the value of the stock may have been "slight or uncertain" at the time.  However, the Trustees have noted that in the 1940's, when the Corporation stock was declared "worthless," it was the practice of the brokerage houses to deposit "worth-

less" stock in warehouses.  Merrill Lynch conducted a search for the certificates in its warehouse storage and could not locate the certificates;  neither could Goodbody locate ostensibly warehoused certificates.  The Petitioners contend that this abortive search tends to show that the certificates were lost.  To the contrary, the Trustees contend that if the Petitioners had been in possession of the certificates, they would have been placed in storage in accordance with the Petitioners' practice when the stocks ceased to have any trading value in the 1940's.  While none of this evidence is conclusive one way or the other, the existence of these practices supports the reasonableness of requiring independent credible evidence of beneficial ownership where brokerage houses are concerned.

■ Third, the Petitioners argue that an indemnity bond would sufficiently protect the Trust, thereby rendering any additional requirements superfluous.  To maintain this position, however, is to ignore the clear provision of § 8–405(2).  By permitting the issuer to impose on an owner of allegedly lost securities "other reasonable requirements," in addition to an indemnity bond, § 8–405(2) impliedly acknowledges that

2.  In support of Trustees' motion for summary judgment, the Managing Trustee filed an affidavit in which he outlined the following occurrences:

1.  In 1974, Pauline Pruss presented to the Company certificates representing 1,000 shares of Corporation stock, endorsed in blank, for which Petitioner Goodbody was listed as the holder of record.

2.  In 1976, Marie Rannou presented certificates representing 50 shares of Corporation stock endorsed in blank and registered in the name of Irving Weis, a petitioner-below.

3.  Certificates representing 200 shares of Corporation stock held of record by Fenner & Beane, a Merrill Lynch predecessor, have been presented to the Trustees' counsel.

3.  In his affidavit, the Managing Trustee recounts the following incidents:

1.  In 1967, Edith Claire Minion, acting as sole heir to the estate of Arthur Trowbridge, presented for replacement 900 shares of Corporation stock registered in the name of Arthur Trowbridge.  The replacement shares were issued upon posting of a surety bond plus an

affidavit claiming loss.  Apparently, Trowbridge held record ownership of the stock as a brokerage nominee, because in 1973, heirs of George Scudieri presented 200 Corporation shares which Edith Minion had claimed to own.  After extended litigation, Scudieri's heirs were able to recover on the indemnity bond which Edith Minion had posted.

2.  In 1976, Maurice A. Ravat presented 300 certificates representing Corporation stock of which John F. Loughnan was the holder of record.  However, again, it seems that Loughnan held as a brokerage house nominee; for, in 1967, Loughnan's heirs had secured replacement shares of the Company claiming loss of the very certificates that Ravat presented.  After posting a surety bond and filing an affidavit of loss, the replacement certificates were issued to Loughnan's heirs.  Eventually, Ravat's estate was able to recover on the surety bond which Loughnan's heirs posted.

3.  In 1975, Martin Sanders claimed beneficial ownership of 16,400 shares of Corporation stock for which Josephthal & Co. was listed as the holder of record.  Shortly thereafter, 6,000 of those shares were presented to the Trustees.

merely posting a bond may not adequately safeguard the issuer's interest. Therefore, the fact that the Petitioners have proffered an indemnity bond does not in itself render all other additional requirements per se unreasonable under the Statute.

■ Fourth, we look to an analogous situation under Delaware law to evaluate the reasonableness of requiring proof of beneficial ownership in connection with a claim of lost securities. In 8 *Del.C.* § 168 [4] are set forth the procedures necessary to obtain a judicial order compelling the issuer to issue replacement certificates for those allegedly lost or stolen. As the party seeking relief from the court, the burden is on the petitioner under the Statute to establish with reasonable certainty that the certificates were owned by him and that they had become lost or destroyed. In two instances, our courts have found that, in the case of brokerage houses, proof of record ownership plus the posting of an indemnity bond was neither sufficient proof of ownership nor sufficient protection for the corporation to justify an order compelling a corporation to issue replacement certificates under § 168. *Keech v. Zenith, supra; In re Metropolitan Royalty Corp.*, Del.Super., 62 A.2d 857 (1948). There it was noted that the practice of trading in "street name" meant that those actually holding the certificates could appear in the future. Thus, it has long been the rule that in a § 168 proceeding where brokerage houses are concerned, only proof of beneficial ownership will fulfill the petitioner's burden of showing ownership with "reasonable certainty." *Keech v. Zenith, supra* at 273. It would require a patent inconsistency in the law and a twist in logic for this Court to find the Trustees' requirement unreasonable when it is well established that a plaintiff seeking replacement certificates under § 168 must prove beneficial ownership with reasonable certainty.

■ Finally, the Petitioners contend that such a requirement could not be reasonable because it would work a forfeiture upon them. We find no merit in this contention. It is true that equity abhors a forfeiture. *Jefferson Chemical Co. v. Mobay Chemical Co.*, Del.Ch., 267 A.2d 635 (1970); *Standard Packaging Corp. v. Goodrich*, Vt. Supr., 131 Vt. 57, 300 A.2d 541 (1972). However, in order to establish that a forfeiture will occur, one must establish that he had a definite interest in the property to be forfeited. *Van Hosen v. Bankers Trust Co.*, Iowa Supr., 200 N.W.2d 504, 507 (1972); *L & K Realty Co. v. R.W. Farmer Construction Co.*, Mo.App., 633 S.W.2d 274, 279 (1982). In a case involving the title to real estate, the Fifth Circuit explained, "One found to be without title is not the victim of a forfeiture. He had nothing to forfeit." *De Tenorio v. McGowan*, 5th Cir., 510 F.2d 92, 102, *reh'g denied*, 5th Cir., 513 F.2d 294, *cert. denied*, 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975). This case centers upon the Petitioners' inability to prove their beneficial own-

---

**4.** 8 *Del.C.* § 168 provides:

§ 168. Judicial proceedings to compel issuance of new certificate or uncertificated shares.

(a) If a corporation refuses to issue new uncertificated shares or a new certificate of stock in place of a certificate theretofore issued by it, or by any corporation of which it is the lawful successor, alleged to have been lost, stolen or destroyed, the owner of the lost, stolen or destroyed certificate or his legal representatives may apply to the Court of Chancery for an order requiring the corporation to show cause why it should not issue new uncertificated shares or a new certificate of stock in place of the certificate so lost, stolen or destroyed. * * * Thereupon the court shall make an order requiring the corporation to show cause ... why it should not issue new uncertificated shares or a new certificate of stock in place of the one described in the complaint. * * *

(b) If, upon hearing, the court is satisfied that the plaintiff is the lawful owner of the number of shares of capital stock, or any part thereof, described in the complaint, and that the certificate therefor has been lost, stolen or destroyed, and no sufficient cause has been shown why new uncertificated shares or a new certificate should not be issued in place thereof, it shall make an order requiring the corporation to issue and deliver to the plaintiff new uncertificated shares or a new certificate for such shares. [The court must also require that the plaintiff post an indemnity bond.]

ership of the stock certificates. Having demonstrated no beneficial interest in the certificates, the Petitioners have nothing substantial to lose; thus, there can be no forfeiture.

\* \* \*

■ For the foregoing reasons, we conclude that the Trustees' requirement of independent credible evidence of beneficial ownership was a reasonable requirement within the meaning of § 8–405(2)(c).

■ Finding as we do that the Petitioners have failed to satisfy that requirement, we conclude that the Trustees properly refused to issue replacement certificates to the Petitioners.

\* \* \*

AFFIRMED.