THE RENCO GROUP, INC., DR Acquisition Corp. and Ira L. Rennert, Plaintiffs/Appellants,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et. al., Defendants,

Zurich American Insurance Co. AIU Insurance Co., Lexington Insurance Co., Allstate Insurance Co., Government Employees Insurance Co., First State Insurance Co., Mt. McKinley Insurance Co. And Everest Reinsurance Co., Defendants/Respondents.

No. ED 96801.

Missouri Court of Appeals, Eastern District, Division Three.

March 20, 2012.

Dennis E. O'Connell, Elizabeth C. Carver St. Louis, MO, for Appellants.

Robyn G. Fox, St. Louis, MO, Richard A. McDermott, Joseph A. Hinkhouse, Chicago, IL, for Respondents American International Underwriters Ins. Co. and Lexington Ins. Co.

John F. Cooney St. Louis, MO, Guy A. Cellucci, Shane R. Heskin, for Respondent GEICO.

Kurtis B. Reeg, Timothy A. McGuire, St. Louis, MO, Thomas K. Hanekamp, Devin C. Maddox, Chicago, IL, for Respondent Allstate Insurance Co.

Ann E. Buckley, St. Louis, MO, Robert D. Anderle, Daniel F. Gourash, Cleveland, OH, for Respondents Everest Nat'l. Ins. Co. and Mt. McKinley Managers, LLC.

Theodore J. MacDonald, Jr., Michael L. Young, Jessica L. Hawkins, St. Louis, MO James P. Ruggeri, Joshua D. Weinberg, Washington, DC, for Respondent First State Ins. Co.

SHERRI B. SULLIVAN, J.

*Introduction*

The Renco Group, Inc. (Renco), DR Acquisition Corporation (DRA) and Ira L. Rennert (Rennert) (collectively Appellants) appeal from the summary judgments entered on December 21, 2009 in favor of Zurich American Insurance Company (Zurich), First State Insurance Company, Government Employees Insurance Company, AIU Insurance Company, Lexington Insurance Company, Mt. McKinley Insurance Company, and Everest Reinsurance Company; and on April 29, 2011 in favor of Allstate Insurance Company (collectively Respondents).[1] We reverse and remand.

*Factual and Procedural Background*

Renco is a holding company formed in 1986. DRA is a wholly owned subsidiary of Renco. Together, DRA and Renco own 100 percent of the stock of The Doe Run Resources Corporation (Doe Run). Rennert is chairman of the board, president, and chief executive officer of Renco and chairman of the board of DRA and Doe Run.

Respondents are eight insurance companies which at various times between 1959 and 1985 issued primary and/or excess commercial general liability (CGL) insurance policies to companies called the St. Joseph Lead Company (St. Joseph Lead) or St. Joe Minerals Corporation (St. Joe Minerals). These policies were "occurrence-based" insurance policies. Occurrence-based policies cover bodily injury or property damage occurring during the policy periods.

*How Appellants are related to St. Joseph Lead or St. Joe Minerals.*

St. Joseph Lead was incorporated in New York on March 25, 1864. It owned and operated various mining properties in the State of Missouri. It was authorized in Missouri as a foreign corporation on March 24, 1914. On May 11, 1970, St. Joseph Lead changed its name to St. Joe Minerals. In 1981, St. Joe Minerals was merged into a subsidiary of Fluor Corporation, but retained the name St. Joe Minerals.

In 1994, Fluor Corporation sold the common stock of St. Joe Minerals to DRA. St. Joe Minerals changed its named to Doe Run. In 1994, Renco acquired the preferred stock of Doe Run. The 1994 Stock Sales Agreement states that all of the current insurance policies would be terminated and the termination was of "current insurance coverages" to be "without prejudice to accrued rights under the policies existing as of the closing." Prior to 1994, DRA, Renco and Rennert had no relationship with St. Joseph Lead, St. Joe Minerals, or any entity that held or currently holds an interest in the lead mining operations identified in the underlying lawsuits. However, plaintiffs in the underlying lawsuits have partially based their claims against DRA and Renco on allegations that DRA and Renco are liable for Doe Run's operations during the relevant policy periods.

Currently, Renco owns all of the outstanding preferred stock in Doe Run, while Renco's subsidiary, DRA, owns all of the common stock. Renco's stock is owned by a series of trusts established by Rennert for the benefit of himself and members of his family. Rennert is Chairman of the Board of Directors and President and Chief Ex-

---

1. On April 29, 2011, the trial court also entered an Order and Judgment stating that its December 21, 2009 and April 29, 2011 orders granting summary judgment were "final orders and judgments and for which there is no just reason to delay any appeal."

ecutive Officer (CEO) of Renco. Rennert is also Chairman of the Board of Directors of DRA. From the acquisition of Doe Run's stock by DRA until the present, Rennert has also been the Chairman of the Board of Directors of Doe Run.

At the time its stock was purchased, Doe Run's assets included a lead smelter in Herculaneum, Missouri, as well as various lead mines and mills and a secondary lead smelter in Boss, Missouri.

*Underlying Lawsuits:*

Doe Run, Renco, DRA, and Rennert have been sued by various individuals alleging personal injuries and property damage arising from, among other things, the lead products and operations of St. Joseph Lead and St. Joe Minerals during the policy periods of Respondents' insurance policies. Appellants and Doe Run are sued based on their status as alleged successors to St. Joseph Lead and/or St. Joe Minerals, as well as the status of Renco and DRA as stockholders of Doe Run and Rennert's status as an officer and director of Doe Run.

Appellants have denied any liability to the claimants in the underlying lawsuits and sought coverage under Respondents' policies with respect to 47 lawsuits in which various claimants sought or continue to seek damages from Appellants for personal injuries and property damage resulting from pollution allegedly caused by lead mining operations in Missouri. Zurich, as the primary insurer for many of the years at issue, has defended Doe Run in several of the underlying lawsuits, and has acknowledged that coverage is available to Doe Run under its policies for claims and liability to the extent that it incurs liability "from its status as successor to St. Joe." But despite Renco, DRA, and Rennert's tender of those same lawsuits to Respondents for defense, Respondents have disclaimed any coverage for Appellants under the various policies issued between 1959 and 1985, claiming that despite Appellants' status as stockholders, directors, or officers of Doe Run, none of them qualify as an "Insured" under the policies.

Appellants filed their Petition for Breach of Contract and Declaratory Judgment in the Circuit Court of St. Louis County on July 9, 2007, naming the 8 Respondents herein as defendants, as well as 18 other insurance companies. Appellants alleged that each of the Respondents had issued general liability, excess, and/or umbrella insurance policies under which Appellants were entitled to defense and indemnification in connection with the underlying lawsuits. Respondents answered and eventually obtained summary judgment based on their arguments that Appellants did not qualify as "Insureds" under the relevant policies. This appeal follows.

### Points on Appeal

■ In their first point, Appellants assert the trial court erred in granting summary judgment to Respondents because Renco and DRA are entitled to coverage under the Respondents' policies in that Doe Run is a named insured under those policies as successor to St. Joseph Lead and St. Joe Minerals, and Doe Run's stockholders, Renco and DRA, fit within the "named insured" provisions of those policies, which extend "named insured" status to "affiliated companies."

In their second point, Appellants claim the trial court erred in granting summary judgment to Respondents because Appellants are entitled to coverage under Respondents' policies in that Doe Run is a named insured under those policies as successor to St. Joseph Lead and St. Joe Minerals, and Appellants therefore fit within the "insured" definition of the policies because Renco and DRA are stock-

holders of the named insured, Doe Run, and Rennert is a director of Doe Run and an executive officer and director of Renco.

In their third point, Appellants maintain that to the extent the trial court relied on the policies' anti-assignment provision or the 1994 sale agreement between DRA and Fluor Corporation, the trial court erred in granting summary judgment to Respondents because (a) anti-assignment provisions do not preclude coverage either for Doe Run or Appellants in that no assignment was necessary because Doe Run is the policies' named insured, St. Joe Minerals, with a different name; and in any event, such provisions apply only prospectively to bar coverage for new risks, and Appellants are entitled to coverage for losses that occurred during the respective policy periods; and (b) at the time of the 1994 sale agreement, Respondents' policies were legacy policies that were not currently in force and were not terminated by that agreement.

### Standard of Review

Where, as here, the trial court granted summary judgment, this Court applies a *de novo* standard of review. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo.banc 2010). The interpretation of an insurance policy, and the determination whether coverage is ambiguous, are also questions of law that this Court reviews *de novo*. *Id.*

### Discussion

The relevant portions of the policies are substantially similar. In relevant part, the policies provide coverage to certain entities listed on the policies' Insured endorsements and entities meeting the policies' definitions of Insured, substantially similar to the following:

NAMED INSURED

ST. JOSEPH LEAD COMPANY [or ST. JOE MINERALS CORPORATION] AND ALL AFFILIATED OR SUBSIDIARY COMPANIES AS THEY ARE NOW OR MAY HEREAFTER BE CONSTITUTED EXCEPT FOR THOSE INCORPORATED OUTSIDE THE UNITED STATES OF AMERICA, ITS TERRITORIES OR POSSESSIONS AND MERAMEC MINING CO.

In addition to affiliates and subsidiaries, the policies also contain Insured provisions that provide coverage for executive officers, directors or stockholders of the Insured while "acting within the scope of [their] duties as such."

The cardinal rule in contract interpretation is to ascertain the intention of the parties and to give effect to that intention. *Armstrong Business Services, Inc. v. H & R Block*, 96 S.W.3d 867, 874 (Mo.App. W.D. 2002). Unless the contract is ambiguous, the intent of the parties is determined based on the contract alone, not on extrinsic or parol evidence. *Id.* In determining whether a contract is ambiguous, words should be given their natural and ordinary meaning. *Id.* A contract is ambiguous if its terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain. *Id.* A contractual provision is not ambiguous merely because the parties disagree over its meaning. *Id.*

The policy language in the instant case is not ambiguous. Giving the operative word in the phrase "all affiliated or subsidiary companies as they are now or may hereafter be constituted" its plain, natural and ordinary meaning, "hereafter" is defined, as an adverb, thusly: "1. after this in sequence or in time; 2. in some future time or state." *Webster's New Collegiate Dictionary* 566 (9th ed.1985). "Hereafter" is defined in *American Heritage Dictio-*

*nary* (4th ed.2010) as: "1. Immediately following this in time, order, or place; after this. 2. In a future time or state."[2] These definitions leave the meaning of the word "hereafter" open-ended temporally. Also, because the exact phrasing in the policy provision itself, to-wit: "as they are now or may hereafter be constituted," directly contrasts the word "hereafter" with the word "now" by using the word "or," its plain meaning of open-endedness is all the more clear. As such, the plain meaning of the chosen word "hereafter" shows the parties' intent that all companies affiliated with or subsidiary to St. Joseph Lead or St. Joe Minerals "now" was at the time the policy was in effect, and "hereafter" was left open to the future.

■ We read and construe a contract *as a whole* and determine the intent of the parties, giving effect to that intent by enforcing the contract as written. *Thiemann v. Columbia Public School Dist.*, 338 S.W.3d 835, 839–40 (Mo.App. W.D.2011). Doing so in this case, we glean the following from other parts of the policies. The parties knew how to circumscribe the limits of the policy with regard to the *time span of occurrences* the policies would cover and did so through their use of policy periods, which were in place in all of the policies at issue. The parties also knew how to circumscribe the policy limits *monetarily*, which they did by setting forth a maximum amount of policy limits, or monetary coverage available per occurrence. The parties also knew how to limit the policies' coverage *geographically*, which they did by incorporating the language including affiliates and subsidiaries "except for those incorporated outside the United States of America, its territories or possessions and Meramec Mining Co[mpany]."

However, the one thing the parties did not circumscribe was the limits of the policy with regard to the Insured's identity, to-wit: St. Joseph Lead or St. Joe Minerals *and all affiliated or subsidiary companies as they are now or may hereafter be constituted* as well as the executive officers, directors and stockholders thereof while acting within the scope of their duties as such. There is no limiting language here. Therefore, in the instant case, the Insured is Doe Run, which is St. Joe's successor in interest, and Appellants, which are comprised of affiliates, stockholders, officers and directors of Doe Run. It is important to re-emphasize here that the time of occurrence, monetary, and geographical limits remain in place with regard to the extent of coverage afforded by the policies to Doe Run and Appellants. The coverage is *limited to the actions and operations of St. Joseph Lead and St. Joe Minerals within the geographic limits and during the policy periods,* no more and no less, which led to allegations of successor liability. The policies contain no coverage for actions of Appellants after the policy periods and after the acquisition of Doe Run.

■ This unambiguous, plain *language interpretation of the policy language* at issue also harmonizes with the nature of the occurrence-based coverage of these policies. It is preferable to harmonize all provisions of a policy, rather than leave some provisions nonfunctional or nonsensical. *Nodaway Valley Bank v. E.L. Crawford Const., Inc.,* 126 S.W.3d 820, 827 (Mo. App. W.D.2004). The parties do not dispute that the policies at issue are occurrence-based. An occurrence-type policy covers cases of progressive injury where the cause of the damage is present during the policy period but the damage is not apparent until after the policy period.

**2.** Definition available at http://ahdictionarv. com/word/search.html?q=hereafter.

*D.R. Sherry Const., Ltd. v. American Family Mut. Ins. Co.*, 316 S.W.3d 899, 905 (Mo.banc 2010). Occurrence-based policies cover negligent acts or omissions which occur within the policy period, regardless of the date when the negligent acts or omissions are discovered or claim is made. *Continental Cas. Co. v. Maxwell*, 799 S.W.2d 882, 886 (Mo.App. W.D.1990). By contrast, in a claims-made policy, the coverage is effective when the negligent or omitted act is discovered and brought to the attention of the insurer regardless of when the act or omission occurred. *Id.*; see also Appleman, 7a Insurance Law and Practice 312 (Berdal Ed.1979). The basic distinction between claims-made and occurrence policies is that while the occurrence policy is triggered by the insured's liability-producing conduct, the claims-made policy is triggered by the presentation of a claim. *Continental Cas. Co.*, 799 S.W.2d at 886; see also Goldfein, Legal Malpractice Insurance, 61 Temple L.Rev. 1285, 1287–88 (1988).

Therefore, it is conceivable that a negligent act occurring from 1959 to 1986 would still be covered today by the insurance policies at issue, even though the policies themselves have expired, because they are occurrence-based. Respondents' construction of the policies at issue would effectively nullify these occurrence-based claims by eliminating the available Insureds under these policies. Such a construction would foreclose coverage for an otherwise covered occurrence simply based on transfer of ownership. Such a result is the opposite of what occurrence-based coverage is supposed to achieve.

Respondents insist that the original parties to the contract clearly intended the meaning of "all affiliated or subsidiary companies as they are now or may hereafter be constituted" to be limited to or "temporally bookended by" the policy periods. However, when the language of a contract is plain, as we have already found, there can be no construction because there is nothing to construct. *L & K Realty Co. v. R.W. Farmer Const. Co.*, 633 S.W.2d 274, 278 (Mo.App. W.D.1982). Such an interpretation is inappropriate here and unnecessary because the terms of the policy provision are already clear and unambiguous. *Id.*

Furthermore, Respondents' interpretation adds limiting language into the policy provision that is not there, materially altering it. *Id.* An interpretation that inserts language into a contract is forbidden. *Id.* In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation. *Brackett v. Easton Boot & Shoe Co.*, 388 S.W.2d 842, 847 (Mo.1965).

In addition to our affirmative resolution of coverage through a simple examination of the unambiguous, plain meaning of the language, there are other controlling principles regarding an insurer's contractual duty to defend under Missouri law. An insurance company has a duty to defend an insured when the insured is exposed to potential liability to pay based on the facts known at the outset of the case, no matter how unlikely it is that the insured will be found liable or whether the insured is ultimately found liable. *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. App. W.D.2005); *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo.banc 1999). To extricate itself from a duty to defend the insured, the insurance company must prove that *there is no possibility of coverage. Truck Ins. Exchange*, 162 S.W.3d at 79; *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170.

Coverage is principally determined by comparing the language of the insurance policy with the allegations in the pleadings. *Truck Ins. Exchange*, 162 S.W.3d at 79; *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170. Here, the underlying plaintiffs are suing Appellants as successors, affiliates, stockholders, officers and directors of St. Joe Minerals and/or St. Joseph Lead, in part, for damages and injuries stemming from occurrences during the relevant policy periods; and Respondents' insurance policies insure the successors, affiliates, stockholders, officers and directors of St. Joe Minerals and/or St. Joseph Lead against damages and injuries stemming from occurrences during the relevant policy periods. Therefore, by comparing the allegations in the petitions with the language in the insurance policies, coverage, or at least a duty to defend, arises. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. *McCormack Baron Mgmt. Servs., Inc.*, 989 S.W.2d at 170–71; see also *Butters v. City of Independence*, 513 S.W.2d 418, 424 (Mo.banc 1974), and *Zipkin v. Freeman*, 436 S.W.2d 753, 754 (Mo.banc 1968). As such, summary judgment was inappropriate at this state of the proceedings.

In this case, Appellants are not asserting coverage for any allegations of damage that occurred outside of the policy periods for which Respondents are responsible. They are only requesting coverage for occurrences within the policy periods. They seek coverage for the very liabilities the parties intended to insure at their inception, arising from the activities of St. Joseph Lead and St. Joe Minerals during the respective policy periods. Appellants merely assert a right to the defense and indemnity for the very risks Respondents agreed to insure.

Coverage can exist if there is property damage during the policy period, but the insured had no factual relationship to the property until after the policy expired. Allan D. Windt, 3 Insurance Claims & Disputes 5th (INCD) § 11:4 (2012). To hold otherwise would compel a conclusion that when damage initially occurs during the policy period of an occurrence-based CGL policy, there can be no potential for coverage just because the plaintiff does not come knocking on the door until after the policy period has ended. *Standard Fire Ins. Co. v. Spectrum Community Ass'n*, 141 Cal.App.4th 1117, 1129, 46 Cal.Rptr.3d 804, 813 (Cal.App. 4 Dist.2006). Such a result would transform the policies at issue into claims-made as opposed to occurrence policies. The occurrence-based policies at issue cannot be construed that way. In fact, "the insurance industry's introduction of 'claims made' policies into the area of comprehensive liability insurance itself attests to the industry's understanding that the standard occurrence-based CGL policy provides coverage for injury or damage that may not be discovered or manifested until after expiration of the policy period." *Standard Fire Ins. Co.*, 141 *Cal.App.4th* at 1131, 46 Cal.Rptr.3d at 814.

 The duty to defend is broader than the duty to indemnify. *McCormack*, 989 S.W.2d at 170; *Truck Ins. Exchange*, 162 S.W.3d at 79. If the allegations and claims in the plaintiffs' petitions are potentially within the scope of the policies' coverage, then Respondents wrongfully refused to defend Appellants. *McCormack*, 989 S.W.2d at 170; *Valentine–Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo.App. W.D.1999). The duty to defend *potentially insured claims* arises "'even though claims beyond coverage may also be present.'" *Truck Ins. Exchange*, 162 S.W.3d at 79, quoting *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d

477, 482 (Mo.App. E.D.1998). To suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make the duty to defend provision a hollow promise. *McCormack,* 989 S.W.2d at 170; John A. Appleman & Jean Appleman, 13 Insurance Law and Practice 4684 (rev.vol. 1976).

The plaintiffs in the underlying lawsuits have partially based their claims against Appellants on allegations that DRA, Renco and Rennert are liable for Doe Run's (a/k/a St. Joe Minerals and/or St. Joseph Lead) operations during the relevant policy periods. These claims have not yet been resolved. If, in fact, the plaintiffs are successful on the merits of these particular claims based on damages they incurred as a result of occurrences during the respective policy periods, then the coverage provided by Respondents' occurrence-based policies will be triggered, and they will be held responsible to the current Insured. However, at this point in the litigation, it is premature to foreclose Appellants from coverage in case they are held liable for the damages stemming from said occurrences.

Points I, II and III are granted to the extent that they allege the trial court erred in granting summary judgment to Respondents, for the reasons set forth in this opinion.

### Conclusion

We find that Renco, DRA and Rennert are entitled to a defense and may be entitled to coverage under the particular policies at issue for occurrences for which they are found to have liability as affiliate, subsidiary, stockholder, executive officer, and/or director of Doe Run, the successor in interest to St. Joseph Lead and St. Joe Minerals, that transpired during the respective policy periods from 1959 to 1986.

Because their liability for such occurrences has not been foreclosed, it was error to prematurely and permanently eliminate their coverage and defense for such potential liability. Therefore, to the extent the trial court's summary judgments did remove such duties of defense and coverage from Respondents to Appellants, they are reversed and remanded for proceedings consistent with this opinion.

ROBERT G. DOWD, JR., P.J., and MARY K. HOFF, J., concur.